IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 27, 2001 Session

## STATE OF TENNESSEE v. JARRETT SHERRARD SIBERT

**Appeal from the Circuit Court for Warren County**
**No. 253320    Charles D. Haston, Judge**

---

**No. M2000-02807-CCA-R3-CD - Filed January 8, 2002**

---

The Defendant, Jarrett Sherrard Sibert, was convicted of attempted first degree murder by a Warren County jury. After a sentencing hearing on January 14, 2000, the trial court sentenced the Defendant as a Range I standard offender to 24 years in the Department of Correction. On appeal, the Defendant argues that (1) the evidence was insufficient to support the jury's verdict of guilty beyond a reasonable doubt and (2) the trial court improperly sentenced the Defendant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Dan Bryant, Public Defender, for the appellant, Jarrett Sherrard Sibert.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; and Dale Potter, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant and Angie Sibert, the victim in this case, were married. The two had a historically stormy relationship which included the Defendant being charged with assault and an Order of Protection being issued to insure the victim's safety. The victim testified to several instances of domestic violence in addition to the instance from which the assault charge arose. One such instance included the Defendant firing a gun at the victim and damaging the wall of the apartment the two shared. Despite their troubled past, the victim testified that, prior the events of May 2, 1999, she loved the Defendant and wanted to make their marriage work.

On May 2, the victim was at home with the Defendant and his two small children. The Defendant's children were crying, and the Defendant was in the bathroom braiding his hair. The victim decided to leave the house and visit her sister in order to give the Defendant time with his children. The victim entered the bedroom adjacent to the bathroom where the Defendant was braiding his hair to retrieve her keys and her ATM card. The Defendant became angry that the victim was leaving and an argument ensued. The victim testified that the Defendant put a gun to her head and pulled the trigger. Initially, the gun did not fire, so the Defendant shook the gun, cocked it, and again aimed it at the victim's head. The Defendant fired the gun and the victim was struck in the neck.

After being shot, the victim stumbled through the house, attempted to call 911, and eventually crawled out to the front porch where she saw two children and asked them for help. The victim lay on the porch until Sandra Roberts, a neighbor, came to her aid. Ms. Roberts stated that the victim told her that she had been shot. Ms. Roberts also testified that the Defendant did not offer to render aid to the victim.

When the police arrived at the scene the Defendant gave two statements. The first stated that the Defendant was in the bedroom when he heard a gunshot. He then ran into the living room to find his wife lying on the front porch bleeding. The second statement was identical to the first except that the Defendant claimed to have seen a black male running beside the apartment building after the shooting. Based on the information provided by the Defendant, the police conducted a three hour search of the area. During this search, the police recovered a black pistol containing one spent cartridge and four unfired cartridges.

After being taken to the police station for questioning, the Defendant made yet another statement in which he claimed ownership of the gun found by police and stated that he had been cleaning the gun when it discharged and struck the victim. He explained that he hid the gun because he was afraid the police would assume that he shot the victim intentionally because of the prior domestic assault.

As a result of the shooting, the victim spent five days in the hospital and incurred extensive medical expenses. The bullet remains lodged in the victim's neck near her spine. Attempting removal would risk paralysis and possibly death. The victim has also suffered permanent damage to her vocal cords and extensive scarring.

The Defendant testified at trial that he was cleaning his gun when it accidently discharged and struck the victim. The Defendant denied previously firing the gun at the victim and striking the apartment wall, as well as placing the gun to the victim's head on May 2. The Defendant also testified that after the shooting, he held and comforted the victim.

**SUFFICIENCY**

First, the Defendant argues that the evidence produced at trial is insufficient to support the jury's verdict of guilty beyond a reasonable doubt. Specifically, the Defendant contends that no evidence of premeditation exists and his conviction should thus be reduced to attempted second degree murder. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

One commits attempted first degree murder when he or she attempts an "intentional and premeditated killing of another." Tenn. Code Ann. § 39-13-202(a)(1). "Intentional" is defined as the "conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302. Premeditation requires "the exercise of reflection and judgment." Id. § 39-13-202(d). Furthermore, the element of premeditation is a question for the jury which may be established by proof of the circumstances surrounding the killing. See State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). Several factors may be considered to support the existence of these elements, including the use of a deadly weapon upon an unarmed victim, the defendant's conduct or demeanor before and after the incident, and the defendant's failure to render aid to the victim. See id.; State v. Anderson, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992); State v. Fugate, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988).

Again, we must view the evidence in the light most favorable to the State. The victim testified that the Defendant placed the pistol to her head and pulled the trigger. After the gun did not fire, the Defendant shook the gun, cocked it, and aimed it at her head again. The Defendant then fired a second time hitting the victim in the neck. Additionally, Sandra Roberts testified that the Defendant did not attempt to aid the victim while she lay bleeding on the front porch. The victim's testimony concerning the circumstances of the shooting, the use of the deadly weapon, the Defendant's conduct and demeanor before and after the shooting, and his failure to aid the victim all provide support for a finding of premeditation.

While the Defendant testified at trial that the shooting was an accident, it is clear that the jury credited the testimony of the State's witnesses. Accordingly, we find sufficient evidence to establish premeditation and support the jury's verdict of guilty of attempted first degree murder beyond a reasonable doubt. This issue is without merit.

## SENTENCING

Finally, the Defendant contends that the trial court erroneously applied several enhancement factors in sentencing him to twenty-four years.[1] While we agree, and the State concedes, that the trial court erred in finding that the Defendant was on probation at the time of the offense, the four remaining enhancement factors support and justify the Defendant's sentence.[2]

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for

---

[1] The Defendant also contends that the trial court applied the enhancement factors set forth in Tennessee Code Annotated section 40-35-114 (10) and (16). However, it is clear from the record that the trial court found those factors to be part of the offense charged and, therefore, inapplicable.

[2] At the sentencing hearing, the court stated that the Defendant would be sentenced as a violent offender and serve 100 percent of his sentence. Subsequently, the trial court apparently discovered that the violent offender statute does not apply to attempt. See Tenn. Code Ann. § 40-35-501 (h)(2)(i)(2). We mention this simply to note that neither attempted offenses nor assaultive offenses are included under the violent offender statute. Thus, in a case like the one before us where a Defendant shoots his victim in the neck with a .22 caliber pistol, causing substantial injury, the Defendant is nevertheless not eligible to be sentenced as a violent offender.

rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result.  State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Attempted first degree murder is a Class A felony.  See Tenn. Code Ann. § 39-11-117(a)(2). The sentencing range applicable to the Defendant was fifteen to twenty-five years.  See id. § 40-35-112 (a)(1).  The presumptive sentence for a Class A felony is twenty years if there are no enhancement or mitigating factors.  See id. § 40-35-210 (c).

The presentence report reflects that at the time of sentencing the Defendant was twenty-six years old and a high school graduate.  He reported that he started using marijuana when he was eighteen years old.  Prior to his arrest for this offense, he had been employed as a factory worker.

The trial court applied the following enhancement factors under Tennessee Code Annotated section 40-35-114:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> (6) The personal injuries inflicted upon .... the victim [were] particularly great;
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
> (9) The defendant possessed or employed a firearm.... during the commission of the offense; and
> (13) The felony was committed while [the defendant was on probation] from a prior felony conviction.

Id. § 40-35-114(1),(6),(8),(9),(13).

The State concedes that the Defendant was not on probation at the time of the shooting in this case, and, therefore, the trial court erred in applying that enhancement factor.  However, based upon the four remaining enhancement factors, which the Defendant apparently does not contest, we cannot say that the Defendant's sentence is inappropriate.

The Defendant was previously convicted of assault and facilitation of the sale of less that 0.5 grams of cocaine.  He was placed on probation for the facilitation charge and his probation was revoked twice.  The evidence clearly established that the Defendant used a firearm in the commission of the crime, and that the injuries to the victim were particularly great.  The trial court found no applicable mitigating factors.

Therefore, we conclude that, even without the application of enhancement factor (13), the Defendant's sentence is appropriate. We therefore affirm the sentence of the trial court. This issue is without merit.

## CONCLUSION

Accordingly, we conclude that the evidence is sufficient to support the jury's verdict of guilty beyond a reasonable doubt and the Defendant was properly sentenced. For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE